# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | | |
|---|---|---|
| NICOLE L. BOETTGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:20-cv-00134 |
| v. | ) | |
| | ) | Hon. Pamela Pepper |
| LENDING DOLLARS, LLC | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT LENDING DOLLARS, LLC'S
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## <u>PURSUANT TO MANDATORY ARBITRATION AGREEMENT</u>

# TABLE OF CONTENTS

I. Introduction .................................................................................................................... 1

II. Background ..................................................................................................................... 1

    A. Generation and Approval of the Consumer Loan to Plaintiff ............................... 1

    B. The Loan Agreement between Lending Dollars and Plaintiff ............................... 2

    C. Plaintiff's Arbitration Agreement with Lending Dollars .................................... 3

    D. The Undeniably Arbitrable Nature of Plaintiff's Complaint ............................... 4

    E. The Undisputed Validity and Enforceability of Plaintiff's Arbitration
       Agreement .......................................................................................................... 5

III. Legal Standards ............................................................................................................. 6

    A. Standard for Primary Relief Sought: Dismissal of This Action in Its
       Entirety .............................................................................................................. 6

    B. Standard for Alternative Relief Sought:  Stay Pending Arbitration ..................... 6

    C. The Preference for Enforcement of Arbitration Agreements ............................... 7

IV. Argument ...................................................................................................................... 7

    A. The FAA Applies to the Arbitration Agreement ................................................ 8

        1. The Loan affected interstate commerce within the meaning of the FAA ............... 8

        2. The Arbitration Agreement is part of the Loan Agreement, which involved
           transactions affecting interstate commerce, thereby triggering application
           of the FAA ..................................................................................................... 9

    B. Plaintiff's Complaint is subject to arbitration under the Arbitration
       Agreement ........................................................................................................ 10

        1. Plaintiff's agreement to arbitrate is valid and enforceable ................................... 11

           a. Plaintiff concedes the enforceability of her Arbitration Agreement ............... 11

           b. The Arbitration Agreement is otherwise valid and enforceable. .................... 11

        2. Plaintiff's entire Complaint is within the scope of the Arbitration
           Agreement ................................................................................................... 14

        3. Arbitration of TCPA claims is proper and not proscribed by law ......................... 15

    C. Dismissal is the appropriate remedy. ............................................................... 15

        1. *Nevill* warrants dismissal of Plaintiff's Complaint. ........................................... 15

        2. The Seventh Circuit would affirm dismissal under these circumstances. ............ 16

    D. Public policy favors dismissal of Plaintiff's Complaint. ................................... 18

IDETROIT\999999999\0500\2049830.v2-3/25/20

# TABLE OF AUTHORITIES

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) ....................................................... 8

*American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013) ................................. 7

*Andermann v. Sprint Spectrum L.P.*, 785 F.3d 1157 (7th Cir. 2015) ......................................... 15

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ............................................................ 7

*AT&T Technologies, Inc. v. Communication Workers of Am.*, 475 U.S. 643 (1986) .................. 14

*Baumann v. Finish Line, Inc.*, 421 F. App'x 632 (7th Cir. 2011) ............................................... 17

*Beaver v. Mueller*, 263 Wis.2d 431, 662 N.W.2d 678 (Table) (Wis. Ct. App. 2003) ................ 13

*Bush v. National School Studios, Inc.*, 139 Wis.2d 635 (1987) ................................................... 11

*C.G. Schmidt, Inc. v. Permasteelisa North America*, 825 F.3d 801 (7th Cir. 2016) ................... 12

*Chambers v. Aviva Life & Annuity Co.*, 2013 WL 1345455, at *5 (N.D. Ill. Mar. 26, 2013) ...... 17

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) .................................................................... 9

*Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727 (7th Cir. 2005) ............................................ 6

*Denari v. Rist*, 2011 WL 332543, at *11 (N.D.Ill. Mar. 24, 2011) .............................................. 17

*Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801 (7th Cir. 2011) .................................. 6

*Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674 (5th Cir. 1999) ................................................. 17

*First Wis. Nat'l Bank v. Oby*, 52 Wis.2d 1, 188 N.W.2d 454 (Wis. 1971) ................................. 13

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ............................................ 11, 15

*Goetz v. State Farm Mut. Auto. Ins. Co.*, 31 Wis.2d 267, 142 N.W.2d 804 (Wis. 1966) ............ 12

*Gore v. Alltel Communications, LLC*, 666 F.3d 1027 (7th Cir. 2012) .................................... 7, 11

*Grasty v. Colorado Tech. Univ.*, 599 F. App'x 596 (7th Cir. 2015) ............................................ 17

*Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766 (8th Cir. 2011) ................................................. 17

*Gustafson v. Physicians Insurance Co.*, 223 Wis.2d 164, 588 N.W.2d 363 (Wis. Ct. App. 1998) 13

*In re Lube's Estate*, 225 Wis. 365, 274 N.W. 276 (Wis. 1937) ................................................... 12

*Jenkins v. First Am. Cash Advance of Georgia*, 313 F.Supp.2d 1370 (S.D. Ga.2003) ............... 10

*Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868 (11th Cir. 2005) ............ 9, 10

*Johnson v. Orkin, LLC*, 556 F. App'x 543 (7th Cir. 2014) ......................................................... 17

*Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989 (N.D. Ill. 2013)..................................................... 17

*Johnson v. W. & S. Life Ins. Co.*, 598 F. App'x 454 (7th Cir. 2015) ........................................... 17

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907 (7th Cir. 1999) ............................. 7

*McLellan v. Charly*, 313 Wis.2d 623, 758 N.W.2d 94 (Wis. App. 2008) ................................... 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) .......... 10, 11, 14

*Morris F. Fox & Co. v. Lisman*, 208 Wis. 1, 240 N.W. 809 (Wis. 1932) ................................... 12

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) .......................................................................................................................... 7, 8, 14

*Nevill v. Johnson Controls Int'l PLC*, 364 F. Supp. 3d. 932 (E.D. Wis. 2019) ...... 1, 6, 7, 8, 16, 18

*Ozormoor v. T–Mobile USA, Inc.*, 354 F. App'x 972 (6th Cir. 2009).......................................... 17

*Poteat v. Rich Prods. Corp.*, 91 F. App'x 832 (4th Cir. 2004) ................................................... 17

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).......................................... 8

*Runzheimer Int'l, Ltd. v. Friedlen*, 862 N.W.2d 879 (Wis. 2015) ............................................... 12

*Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747 (N.D. Ill. 2015).......................................... 18

*Schultz v. Epic Sys. Corp.*, 376 F. Supp. 3d 927 (W.D. Wis. 2019) ........................................... 18

*Selmer Co. v. Rinn*, 328 Wis.2d 263, 789 N.W.2d 621 (Wis. App. 2010) ................................. 18

*Soto–Fonalledas v. Ritz–Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471 (1st Cir. 2011) . 17

IDETROIT\999999999\0500\2049830.v2-3/25/20

*Southland Corp. v. Keating*, 465 U.S. 1 (1984) ............................................................ 8

*Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) ...................................... 15

*Tuttle v. Sallie Mae, Inc.*, 2014 WL 545379, at \*6 (N.D. Ind. Feb. 11, 2014) ........................... 15

*Villalobos v. EZCorp, Inc.*, 2013 WL 3732875, at \*8 (W.D. Wis. July 15, 2013) ......................... 17

*Wisconsin v. Ho-Chunk Nation*, 478 F. Supp. 2d 1093 (W.D. Wis. 2007), *aff'd in part, vacated in part on other grounds*, 512 F.3d 921 (7th Cir. 2008) ................................................ 9

*Zeige Distributing Co., Inc. v. All Kitchens, Inc.*, 63 F.3d 609 (7th Cir. 1995) ........................... 12

**Statutes**

47 U.S.C. § 227 ............................................................................................ 4, 5, 14

9 U.S.C. § 1 .................................................................................................... 7

9 U.S.C. § 2 .................................................................................................. 8, 11

WIS. ST. §§ 137.13(2), 137.15 ............................................................................... 13

**Rules**

F.R.C.P. 12(b)(3) .............................................................................................. 6

IDETROIT\999999999\0500\2049830.v2-3/25/20

Pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure (collectively, the "Rules," and each, a "Rule") Defendant Lending Dollars, LLC submits the following Memorandum of Law in support of its Motion to Dismiss Pursuant to Mandatory Arbitration Agreement.

## I. Introduction

For at least three reasons, Plaintiff's commencement of this action is improper. First, there is a valid and enforceable arbitration agreement between the parties. Second, Plaintiff's entire Complaint is subject to mandatory arbitration pursuant to the parties' arbitration agreement. Third, Plaintiff should be required to honor her promise to arbitrate and not shirk that contractual obligation through maintenance of this action. Accordingly, this action should be dismissed for the same reasons expressed last year by this Court in *Nevill v. Johnson Controls Int'l PLC*, 364 F. Supp. 3d. 932 (E.D. Wis. 2019).

## II. Background

### A. Generation and Approval of the Consumer Loan to Plaintiff

Lending Dollars is a financial services company located in West Bloomfield, Michigan. **Exhibit A**, Affidavit of Henry Frenkel, ¶ 3. Lending Dollars utilizes a third-party vendor located in South Carolina (the "Loan Servicer") to screen potential borrowers and to service and manage loans from Lending Dollars to qualified borrowers. *Id.* at ¶ 4. The Loan Servicer initially became aware of Plaintiff when it received a lead that she was seeking a consumer loan in early July 2019. *Id.* at ¶ 5. The Loan Servicer received that lead from yet another third-party company, which is based in California, and which generates leads on potential borrowers and provides those leads to companies like the Loan Servicer. *Id.* at ¶ 6.

Plaintiff's loan application to Lending Dollars was uploaded to Lending Dollars' website for review. *Id.* at ¶ 7. Plaintiff's application was subsequently reviewed and approved, pending her acceptance of the "Agreements," as defined in the next sentence. *Id.* at ¶ 8. Thereafter, Plaintiff electronically received copies of the following agreements (collectively, the "Agreements") for her review, approval, and electronic signature: (A) the Consent for Electronic Records (the "E-Signature Agreement"); (B) the Consumer Installment Loan Agreement (the "Loan Agreement"); (C) the Additional Terms and Conditions of This Agreement; (D) the Waiver of Jury Trial and Arbitration Provision (the "Arbitration Agreement"); and (E) the Voluntary Authorization Agreement for Electronic payments (ACH Debits and Debit Cards). All Agreements are attached hereto as Exhibit A1. *Id.* at ¶ 9.

Plaintiff reviewed the Agreements online and approved them by causing her electronic signature to appear on each of them. *Id.* at ¶ 10. In so doing, Plaintiff completed the process through which Lending Dollars requires borrowers to knowingly memorialize their acceptance of all of the terms and conditions set forth in their agreements with Lending Dollars. *Id.* at ¶ 11.

Pursuant to the Agreements, on or about July 12, 2019, Lending Dollars disbursed the entire Loan in the amount of $400.00 from its account at Flagstar Bank in Troy, Michigan, to Plaintiff's account at Wells Fargo Bank in Milwaukee, Wisconsin (the "Loan"). *Id.* at ¶ 12. The Loan is the only loan that Lending Dollars has ever made to Plaintiff. *Id.* at ¶ 13.

**B. The Loan Agreement between Lending Dollars and Plaintiff**

The Loan Agreement sets out the contractual terms and conditions of Plaintiff's Loan from Lending Dollars, including the Loan amount, the payment schedule and several other terms and conditions addressed to the parties' rights and obligations respecting the Loan. Exhibit A1 at 2. The Loan Agreement required Plaintiff to repay the Loan over the course of fourteen bi-weekly

2

installment payments. *Id.* The interest on her loan was not compounded but rather was simple interest, and Plaintiff had the option to repay the loan in full at any time, without penalty, and in full satisfaction of her obligations to Lending Dollars under the Loan Agreement. *Id.* Plaintiff concedes that she received the Loan from Lending Dollars. ECF No. 1, Complaint, at ¶ 6.

The Loan Agreement contains Plaintiff's express acknowledgement that she signed it, that it was "filled in" before she did so, that she read, understood, and agreed to all of its terms and conditions, that she received a complete copy of it, and that she would receive from Lending Dollars the Loan proceeds in the agreed amount of $400.00. Exhibit A1 at 2. In the course of consummating the Loan Agreement, Plaintiff caused her electronic signature to appear on page 2 of the Loan Agreement. *Id.* at 3; Exhibit A at ¶ 10.

In return for Lending Dollars' disbursement of the Loan proceeds, Plaintiff agreed that the laws of the State of Wisconsin governed the Loan Agreement, except insofar as the Federal Arbitration Act applies. Exhibit A1 at 2. As further consideration for the Loan, Plaintiff expressly acknowledged and accepted the Arbitration Agreement, thereby agreeing to mandatory arbitration of certain "disputes," as defined below. *Id.* at 5-6. Moreover, the Loan Agreement itself further contains Plaintiff's express acknowledgement and acceptance of, and agreement to, the Arbitration Agreement. *Id.* at 2.

## C.    Plaintiff's Arbitration Agreement with Lending Dollars

As with the Loan Agreement, Plaintiff caused her electronic signature to appear on page 2 of the Arbitration Agreement. *See* Exhibit A1 at 6; Exhibit A at ¶ 10. As in the Loan Agreement, Plaintiff agreed that the laws of the State of Wisconsin governed the Arbitration Agreement, except insofar as the Federal Arbitration Act applies. Exhibit A1 at 6. The Arbitration Agreement pro-

IDETROIT\999999999\0500\2049830.v2-3/25/20

vides that "any dispute which cannot be adjudicated within the jurisdiction of a small claims tribunal shall be resolved by binding arbitration," and that "[t]he arbitrator's award may be filed with any court having jurisdiction." *Id.* Elsewhere in the Arbitration Agreement, Plaintiff expressly acknowledged and agreed that "all disputes against us [i.e., Lending Dollars] and/or related third parties shall be resolved by binding arbitration." *Id.* at 5.

As to what kinds of "disputes" the parties agreed to make subject to arbitration, the Arbitration Agreement assigns "disputes" its "broadest possible meaning," to "include, without limitation . . . all federal or state law claims, disputes, or controversies, arising from or relating directly to the Loan Agreement," in addition to "all claims based upon a violation of any state or federal constitution, statute or regulation . . . ." *Id.* at 5 (emphasis added). In plain recognition of Plaintiff's obligation to arbitrate, the Arbitration Agreement contains the following statement: "YOU [I.E., PLAINTIFF] ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES." *Id.* (emphasis in original).[1]

**D.    The Undeniably Arbitrable Nature of Plaintiff's Complaint**

In sum and substance, the entirety of Plaintiff's Complaint is that Lending Dollars allegedly violated a federal statute known as the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). ECF No. 1. Plaintiff freely admits the fact that she defaulted on her Loan from Lending

---

[1] In the E-Signature Agreement, Plaintiff consented to applying for the Loan electronically, as well as to the use of electronic signatures in doing so. *See* Exhibit A1 at 1; *see* Exhibit A at ¶¶ 9-10. As with the Loan Agreement and the Arbitration Agreement, Plaintiff caused her electronic signature to appear on the E-Signature Agreement, in which Plaintiff acknowledged and agreed, among other things, that "BY SIGNING BELOW, YOU [I.E., PLAINTIFF] CONSENT TO USE AND ACCEPT ELECTRONIC SIGNATURES, ELECTRONIC RECORDS, AND ELECTRONIC DISCLOSURES IN CONNECTION WITH THIS TRANSACTION." Exhibit A1 at 1 (emphasis in original).

4

Dollars. *Id.* at ¶¶ 7-8. Plaintiff claims simply that Lending Dollars violated the federal Telephone Consumer Protection Act by placing certain unspecified phone calls to her "in an attempt to collect on the defaulted subject debt" to Lending Dollars. *See id.* at ¶ 7. There are no other claims in the Complaint apart from Plaintiff's TCPA claim. *See id.* Though immaterial to this motion, Lending Dollars disputes the merits of Plaintiff's claim.

**E.**    **The Undisputed Validity and Enforceability of Plaintiff's Arbitration Agreement**

Within days after becoming aware of this lawsuit, counsel for Lending Dollars requested that Plaintiff dismiss it pursuant to the Arbitration Agreement. That led to counsel in this case exchanging multiple emails and holding at least one or two phone conferences with each other to address dismissal. Although Plaintiff has refused to dismiss this action, Plaintiff does not dispute the existence, validity, and enforceability of the Arbitration Agreement. In fact, during one phone conference after Lending Dollars' counsel sent Plaintiff's counsel a copy of the Arbitration Agreement, the former specifically asked the latter whether Plaintiff would have filed this action in the first instance had her counsel seen the Arbitration Agreement beforehand. Without hesitation, Plaintiff's counsel answered no.

In further recognition of the Arbitration Agreement, Plaintiff's counsel sent Lending Dollars' counsel a copy of the email attached hereto as **Exhibit B**. In that email, Plaintiff's counsel made the following assertion: "[S]eeing that the arbitration agreement calls for Lending Dollar [sic] to pay Claimant's filing fees ($250) and its own fees (up to $3,500), it would probably be more prudent for both sides to engage in settlement discussions prior to going down this route as Lending Dollar [sic] would have to pay at least $3,750 at the outset." Therein, leaving aside momentarily any commentary on who is obligated to pay which costs and expenses of arbitration,

IDETROIT\999999999\0500\2049830.v2-3/25/20

Plaintiff's counsel, at the very least, further acknowledged the existence, validity, and enforceability of the Arbitration Agreement, all of which are beyond dispute. Not once over the past several weeks has Plaintiff suggested otherwise.

Yet, notwithstanding the nature of her claim in this action, notwithstanding the express content of her Arbitration Agreement with Lending Dollars, and notwithstanding this very Court's analysis and holding in *Nevill*, Plaintiff has refused to dismiss her Complaint against Lending Dollars, thereby necessitating this motion, which seeks the same relief awarded the movant in *Nevill*, and for the same reasons.

## III.  Legal Standards

### A.  Standard for Primary Relief Sought: Dismissal of This Action in Its Entirety

Rule 12(b)(3) governs motions to dismiss pursuant to an arbitration agreement. *See Nevill*, 364 F. Supp. 3d. at 953. When ruling on a motion to dismiss for improper venue under Rule 12(b)(3), the court may consider facts outside the complaint. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011) (explaining that "on a motion to dismiss for improper venue, the district court is not 'obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment' if the parties submit evidence outside the pleadings'") (quoting *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)).

### B.  Standard for Alternative Relief Sought:  Stay Pending Arbitration

"The standard governing a motion to stay pending arbitration comes from the statutory language of Section 3 of the Federal Arbitration Act." *Nevill*, 364 F. Supp. 3d. at 943. "If a party brings a suit in federal court on any issue 'referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application

6

of one of the parties [for a stay] stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.'" *Id.* (quoting 9 U.S.C. § 3).

## C.    The Preference for Enforcement of Arbitration Agreements

The U.S. Supreme Court has repeatedly held that public policy favors arbitration. *See, e.g., American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 238 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  The U.S. Supreme Court describes the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "<u>FAA</u>"), as "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "Once it is clear . . . that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). "'To this end, a court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." ' " *Id.* (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)).

## IV.    Argument

This action should be dismissed pursuant to the Arbitration Agreement.  Before dismissing a lawsuit under an arbitration agreement to which the FAA applies, a court must satisfy itself of the presence of two factors: first, that all of the claims in the lawsuit are subject to an arbitration agreement between the parties, *see Nevill*, 364 F. Supp. 3d. at 944, and second, that the subject arbitration agreement is susceptible of an interpretation that covers the claims at issue, *see id*. at 952.  Where both factors are present, dismissal is appropriate, if not warranted.  *See id.* at 953.

7

As further set out below, the FAA applies to the Arbitration Agreement here.  The Arbitration Agreement is both valid and enforceable.  Plaintiff's Complaint, in its entirety, unequivocally falls within the scope of mandatory arbitration pursuant to the Arbitration Agreement.  Therefore, and for all of the same reasons that it dismissed the complaint in *Nevill* just last year, this Court should dismiss Plaintiff's Complaint outright.  As a matter of public policy, moreover, this case should be dismissed because a party to a contract, such as Plaintiff here, should be required to honor her contractual obligations, including her promise to arbitrate.

**A.** **The FAA Applies to the Arbitration Agreement.**

**1.** **The Loan affected interstate commerce within the meaning of the FAA.**

The allegations in Plaintiff's Complaint involve "commerce" within the meaning of the FAA.  "<u>A written provision in any . . . contract evidencing a transaction involving commerce</u> to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, <u>shall be valid, irrevocable, and enforceable</u>, save upon such grounds as exist at law or in equity for the revocation of any contract.  9 U.S.C. § 2 (emphasis added).  Thus, the enforceability of <u>any</u> arbitration agreement "involving commerce" is governed by the FAA.  *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967); *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24; *Southland Corp. v. Keating*, 465 U.S. 1, 10-15 (1984).   In that regard, the term "involving commerce" should warrant the broadest interpretation possible, meaning that any arbitration agreement which affects interstate commerce in any way is governed by the FAA.  *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-281 (1995); s*ee also Wisconsin v. Ho-Chunk Nation*, 478 F. Supp. 2d 1093, 1100 (W.D. Wis. 2007), *aff'd in part, vacated in part on other grounds*, 512 F.3d 921 (7th Cir. 2008); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 57 (2003).

8

2.    **The Arbitration Agreement is part of the Loan Agreement, which involved transactions affecting interstate commerce, thereby triggering application of the FAA.**

The FAA applies to arbitration agreements required in return for loans transacted between and among states.  In *Jenkins v. First Am. Cash Advance of Georgia, LLC*, the court found that the subject high-interest consumer loan affected interstate commerce, and therefore, that the FAA applied to the subject arbitration agreement.  400 F.3d 868, 874–75 (11th Cir. 2005).  There, the lender was FNB, a national bank located in South Dakota.  *Id.* at 871.  The plaintiff was a Georgia resident.  *Id.*  FNB utilized a third-party vendor, First American, located in Georgia to manage and service the loans to borrowers in Georgia.  *See id.*  FNB customers, like the plaintiff, seeking to obtain a loan would fill out a loan application at First American's offices.  *Id.*  First American would electronically transmit the application to FNB in South Dakota for review.  *Id.*  FNB would analyze the loan application and make the final decision on whether or not to extend credit.  *Id.*  If FNB approved the application, it would send a consumer loan agreement, which included a promissory note and an arbitration agreement, to First American.  *Id.*  To obtain the loan, the customer would have to sign and date both the promissory note and the arbitration agreement.  *Id.*

The plaintiff in *Jenkins* took out a series of loans from FNB pursuant to the above-described process.  *Jenkins*, 400 F. 3d at 871. She signed and dated a promissory note and arbitration agreement in return for each loan.  *Id.*  On those facts, the court found that the loan affected interstate commerce, thereby triggering application of the FAA.  *Id.* at 875.  In reaching that finding, the court in *Jenkins* echoed the opinion of the district court, explaining as follows: "'First National Bank's role in analyzing loan applications, sending the approved loan applications, funding the loans, and accepting the loan proceeds constitutes sufficient interstate commerce to satisfy the

9

definition of 'involving commerce' within the meaning of 9 U.S.C. §§ 1, 2.'" *Id.* at 874-75 (quoting *Jenkins v. First Am. Cash Advance of Georgia*, 313 F.Supp.2d 1370, 1373 (S.D. Ga.2003) (citation omitted)).

As in *Jenkins*, the FAA applies here. As in *Jenkins*, the lender and borrower here are residents of different states—Michigan and Wisconsin, respectively. *See* Exhibit A at ¶ 3; ECF No. 1 at ¶ 3. As in *Jenkins*, the lender here utilized a third-party vendor not only to put the lender in contact with the borrower, but also to service and manage the loan, including by reviewing of the loan application. *See* Exhibit A at ¶¶ 4-7. Unlike in *Jenkins*, however, the third-party vendor here is a resident of South Carolina—a different state than the lender's and the borrower's respective states of residence—and used a California-based lead-generating company to learn that Plaintiff was in need of a consumer loan, creating yet additional aspects of interstate commerce in this Loan transaction which were not present in *Jenkins*. *See id.* at ¶¶ 4-6. As in *Jenkins*, upon approval of the borrower's application here, the lender required her to sign an agreement to repay the loan, along with an arbitration agreement. *See* Exhibit A at ¶¶ 8-11. Further, the Loan transaction here involved the disbursement of the Loan proceeds across state lines from Lending Dollars' account in Michigan to Plaintiff's account in Wisconsin. *See id.* at ¶ 12. Without question, just as in *Jenkins*, the Loan transaction implicates interstate commerce, thereby triggering application of the FAA to the Arbitration Agreement now before this Court.

**B.     Plaintiff's Complaint is subject to arbitration under the Arbitration Agreement.**

A claim shall be subject to arbitration under the FAA when three criteria are satisfied. First, there must be a valid agreement to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Second, the claim must fall within the scope of the arbitration agreement. *Id.* Third, if the claim is statutory, it must not be one which the legislative

body intended to be precluded from arbitration. *Id.* at 627-28.  All three criteria are present here.

### 1. Plaintiff's agreement to arbitrate is valid and enforceable.

As noted, written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The burden is on the party opposing arbitration to proffer evidence demonstrating that the agreement is invalid. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Plaintiff here cannot meet that burden, as the Arbitration Agreement is valid, irrevocable, and enforceable.

#### a. Plaintiff concedes the enforceability of her Arbitration Agreement.

As a primary matter, Plaintiff has already conceded the validity and enforceability of the Arbitration Agreement.  *See* Exhibit B.  As noted, her attorney indicated that she would not have filed this action had her counsel known of the Arbitration Agreement beforehand.  Plaintiff cannot plausibly reverse course now and argue that her Arbitration Agreement with Lending Dollars is somehow invalid and unenforceable.

#### b. The Arbitration Agreement is otherwise valid and enforceable.

Independent of Plaintiff's concessions, the Arbitration Agreement is indeed valid and enforceable under applicable law. "[F]ederal courts apply state-law principles of contract formation" in determining whether an arbitration agreement is valid and enforceable.  *Gore,* 666 F.3d at 1032. Here, the parties agreed in both the Loan Agreement and the Arbitration Agreement that the substantive law of the State of Wisconsin governs both contracts. *See* Exhibit A1 at 2 & 6.  Those choice of law provisions are valid, especially as Plaintiff is a Wisconsin resident. *See Bush v. National School Studios, Inc.,* 139 Wis.2d 635, 642 (1987) (holding that the parties are generally free to contract for choice of law unless it came at the expense of important public policies of a

11

state whose law would otherwise be applicable).[2]  Even absent consideration of those choice of law provisions, application of Wisconsin's substantive law is appropriate because Plaintiff is a Wisconsin resident, this action was filed in the State of Wisconsin, and the Arbitration Agreement calls for arbitration to take place in the county of Plaintiff's residence in Wisconsin.  *See* Exhibit A1 at 5-6.  With that said, "[u]nder Wisconsin law, an enforceable contract has three elements: offer, acceptance, and consideration."  *C.G. Schmidt, Inc. v. Permasteelisa North America*, 825 F.3d 801, 805 (7th Cir. 2016) (citing *Runzheimer Int'l, Ltd. v. Friedlen*, 862 N.W.2d 879, 885 (Wis. 2015)).

"An offer is a communication by a party of what it will give or do in return for some act by another."  *In re Lube's Estate*, 225 Wis. 365, 368, 274 N.W. 276, 278 (Wis. 1937). No particular form of communication is required; for example, the offer may be written, oral, or implied in fact from the conduct of the parties and other circumstantial evidence. *See Goetz v. State Farm Mut. Auto. Ins. Co.*, 31 Wis.2d 267, 272, 142 N.W.2d 804, 807 (Wis. 1966).

Meanwhile, "[a]cceptance of an offer requires a meeting of the minds, a factual condition that can be demonstrated by word or deed."  *Zeige Distributing Co., Inc. v. All Kitchens, Inc.*, 63 F.3d 609, 612 (7th Cir. 1995) (internal citation omitted).  Like an offer, there is no required form of communication of an acceptance.  *See Morris F. Fox & Co. v. Lisman*, 208 Wis. 1, 240 N.W. 809, 811 (Wis. 1932).

As for consideration, it "is evidence of the parties intend to be bound to a contract, *McLellan [v. Charly]*, 313 Wis.2d [623] at 645-46, 758 N.W.2d [94] at 105 [ (Wis. Ct. App. 2008) ]

---

[2] Even absent consideration of the choice of law provisions in the contracts at issue, application of Wisconsin's substantive law is appropriate because Plaintiff is a Wisconsin resident, this action was filed in the State of Wisconsin, and the Arbitration Agreement calls for arbitration to take place in the county of Plaintiff's residence in Wisconsin.  *See* Exhibit A1 at 5-6.

12

(citing Gustafson [v. Physicians Insurance Co.,] 223 Wis.2d [164] at 173, 588 N.W.2d [363] at 367 [ (Wis. Ct. App. 1998) ], and consists of a benefit to the promisor or a detriment to the promisee, *Beaver v. Mueller*, 263 Wis.2d 431, 662 N.W.2d 678 (Table) (Wis. Ct. App. 2003) (citing *First Wis. Nat'l Bank v. Oby*, 52 Wis.2d 1, 188 N.W.2d 454 (Wis. 1971) ).”  An electronic signature, moreover, establishes the signatory's assent to be bound by the terms of the contract, where the parties also agreed to conduct the transaction electronically. WIS. ST. §§ 137.13(2), 137.15.

Here, for at least the following three reasons, there can be no doubt that the Arbitration Agreement, as part of the Loan Agreement, is based on a valid offer and acceptance, and on Plaintiff's receipt of valid consideration, thereby making the Arbitration Agreement enforceable.  First, the Loan Agreement embodies and memorializes the detailed offer from Lending Dollars by setting out the amount, payment schedule, and other detailed terms and conditions of the Loan.  *See* Exhibit A1 at 2-3.  Second, Plaintiff's electronic signatures on each of the E-Signature Agreement, the Loan Agreement, and the Arbitration Agreement establishes her unequivocal acceptance of the terms and conditions of all three agreements, including her obligation to arbitrate rather than litigate any and all non-small-claims “disputes” against Lending Dollars pertaining to the Loan.  *See* Exhibit A1; Exhibit A at ¶ 11.  Third, there is no denying that Plaintiff received the Loan proceeds from Lending Dollars.  The Loan is the only loan that Lending Dollars has ever made to Plaintiff, and Plaintiff concedes her default of the Loan.  Exhibit A at ¶ 13; ECF No. 1, Complaint, ¶¶ 7-8. Lending Dollars' disbursement of the Loan proceeds was valid consideration in return for Plaintiff's promise to arbitrate pursuant to the Arbitration Agreement.  Accordingly, as Plaintiff has effectively conceded to Lending Dollars over the past several weeks, the Arbitration Agreement is a valid and an enforceable contract.

13

2.      **Plaintiff's entire Complaint is within the scope of the Arbitration Agreement.**

In light of the nature and content of the Complaint, there can be no doubt that Plaintiff's sole claim against Lending Dollars—a federal statutory claim—falls within the scope of the Arbitration Agreement. As noted, the entirety of Plaintiff's Complaint is based on allegations that Lending Dollars violated the federal Telephone Consumer Protection Act (the "TCPA"). *See* ECF No. 1, Complaint. Those phone calls, as Plaintiff contends, were an attempt to collect the unrepaid portion of the Loan. *See, e.g., id.* at ¶ 8 ("Plaintiff began to receive collection calls from Defendant . . . in an attempt to collect on the defaulted subject debt.") Accordingly, Plaintiff's TCPA claim is an arbitrable "dispute" within the meaning of the Arbitration Agreement because it is a federal law claim "arising from or relating directly or indirectly to the Loan Agreement." *See* Exhibit A1 at 5. Additionally, Plaintiff's TCPA claim is an arbitrable "dispute" within the meaning of the Arbitration Agreement—independent of the claim's connection to the Loan Agreement—simply because it is a claim based upon a violation of a federal statute. *Id.* (providing that arbitrable "disputes" include "all claims based upon a violation of any state or federal constitution, statute, or regulation) (emphasis added). Indeed, the Arbitration Agreement expressly provides that any such federal law claim, or federal statutory claim, shall be subject to binding arbitration. *See* Exhibit A1 at 5-6. Without a doubt, Plaintiff's TCPA claim—i.e., her entire Complaint against Lending Dollars—is subject to mandatory arbitration pursuant to the Arbitration Agreement.

That notwithstanding, it is noteworthy that the "[FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors*, supra, 473 U.S. at 626 (quoting *Moses*, supra, 460 U.S. at 4). *See also AT&T Technologies, Inc. v. Communication Workers of Am.*, 475 U.S. 643, 650 (1986) ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.") (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960)).

Accordingly, as Plaintiff herself has recognized in recent weeks, her Complaint falls squarely within her contractual obligation to arbitrate. Therefore, she filed her Complaint in breach of her Arbitration Agreement, which, as further discussed below, warrants dismissal of this action.

### 3. Arbitration of TCPA claims is proper and not proscribed by law.

TCPA claims can be subject to mandatory arbitration. TCPA claims are <u>not</u> among those which Congress intended to exempt from arbitration. The burden is on Plaintiff to establish that the legislature intended to preclude a waiver of judicial remedies for the statutory rights she asserts. *See Gilmer,* 500 U.S. at 26. Plaintiff cannot meet that burden because, among other reasons, the Seventh Circuit has found arbitration agreements to be binding upon TCPA claims. *Andermann v. Sprint Spectrum L.P.*, 785 F.3d 1157, 1160 (7th Cir. 2015) (finding the TCPA claims at issue to be subject to mandatory arbitration under the parties' arbitration agreements, which required any controversy or claim arising out of or relating to the agreements to be resolved by binding arbitration); *see also Tuttle v. Sallie Mae, Inc.*, 2014 WL 545379, at *6 (N.D. Ind. Feb. 11, 2014) (attached hereto as **Exhibit C1**) (rejecting the plaintiff's argument that the text of the TCPA showed that Congress intended for violations to be heard in a judicial forum because Congress used the word "court" throughout the TCPA). Arbitration, therefore, is not only the mandatory venue, but also the proper venue, for adjudication of Plaintiff's TCPA Complaint against Lending Dollars.

### C. Dismissal is the appropriate remedy.

### 1. *Nevill* warrants dismissal of Plaintiff's Complaint.

In light of the foregoing, the same findings should be made here as this Court made in *Nevill*. There, this Court made the following important findings: (i) the FAA applied to the parties'

15

arbitration agreement, 463 F. Supp. 3d. at 943; (ii) that agreement was valid and enforceable, *id.* at 952; and (3) all of the plaintiff's claims against the defendant were subject to arbitration pursuant to the parties' arbitration agreement, *see id.* at 953. On the strength of those findings, this Court not only ordered dismissal of the action in *Nevill*, but also explained that the primary relief sought by the defendant—a stay pending arbitration—was the inappropriate remedy, explaining as follows: "[T]he issue referable to arbitration is the issue at the heart of the federal lawsuit—whether the defendant has violated the COC Agreement. If the court were to "stay" these federal court proceedings, it is not clear what would be left for the court to do once the arbitration has concluded." *Id.*

Here, Plaintiff's TCPA claim against Lending Dollars—a claim of violation of a federal statute—is squarely within the scope of mandatory arbitration under the Arbitration Agreement. On that point, the Arbitration Agreement is unequivocal and not the least bit vague or ambiguous. *See* Exhibit A1 at 5-6 (specifically requiring arbitration of all federal statutory claims). As in *Nevill*, where the Court ordered arbitration because the issue referable to arbitration was the issue at the heart of the federal action, there can be no doubt here that Plaintiff's TCPA claim, which is subject to mandatory arbitration under the Arbitration Agreement, is at the heart of this lawsuit. In fact, it is the entirety of this lawsuit, leaving nothing left for this Court to do upon dismissal of the claim pursuant to the Arbitration Agreement. As in *Nevill*, an order of dismissal is within this Court's discretion and is the appropriate remedy here.

### 2. The Seventh Circuit would affirm dismissal under these circumstances.

In several cases in which the claims at issue were subject to mandatory arbitration under arbitration agreements, the Seventh Circuit affirmed dismissal of those cases pursuant Rule 12(b)(3). *Johnson v. W. & S. Life Ins. Co.*, 598 F. App'x 454 (7th Cir. 2015); *Grasty v. Colorado Tech. Univ.*, 599 F. App'x 596 (7th Cir. 2015); *Johnson v. Orkin, LLC*, 556 F. App'x 543 (7th Cir.

16

2014); *Baumann v. Finish Line, Inc.*, 421 F. App'x 632 (7th Cir. 2011). There is no reason to suspect that the Seventh Circuit would act differently here, in the unlikely event that Plaintiff appealed an order of dismissal.

Those Seventh Circuit decisions are in line with other federal circuits that have recognized that dismissal rather than a stay is appropriate "where it is clear the entire controversy between the parties will be resolved by arbitration." *Green v. SuperShuttle Int'l, Inc.,* 653 F.3d 766, 769–70 (8th Cir. 2011); *see also Soto–Fonalledas v. Ritz–Carlton San Juan Hotel Spa & Casino,* 640 F.3d 471, 473 (1st Cir. 2011); *Ozormoor v. T–Mobile USA, Inc.,* 354 F. App'x 972, 975 (6th Cir. 2009); *Poteat v. Rich Prods. Corp.,* 91 F. App'x 832, 835 (4th Cir. 2004); *Fedmet Corp. v. M/V BUYALYK,* 194 F.3d 674, 678 (5th Cir. 1999). Further, as one neighboring district court recognized, there is a "weight of authority from jurisdictions across the Nation [that] support[] the proposition that a court is <u>not</u> precluded from dismissing a suit under the FAA [and it] should … when all the issues before it are arbitrable." *Johnson v. Orkin, LLC,* 928 F. Supp. 2d 989, 1008-09 (N.D. Ill. 2013) (emphasis added). Not surprisingly, then, district courts have recognized that the Seventh Circuit will affirm the dismissal of cases in which all claims are subject to mandatory arbitration agreements. *See, e.g., Denari v. Rist,* 2011 WL 332543, at *11 (N.D.Ill. Mar. 24, 2011) (attached hereto as **Exhibit C2**); *Chambers v. Aviva Life & Annuity Co.*, 2013 WL 1345455, at *5 (N.D. Ill. Mar. 26, 2013) (attached hereto as **Exhibit C3**); *Villalobos v. EZCorp, Inc.,* 2013 WL 3732875, at *8 (W.D. Wis. July 15, 2013) (attached hereto as **Exhibit C4**); *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 758 (N.D. Ill. 2015); *Schultz v. Epic Sys. Corp.*, 376 F. Supp. 3d 927, 939 (W.D. Wis. 2019). For at least all of those reasons, dismissal is both appropriate and warranted here.

IDETROIT\999999999\0500\2049830.v2-3/25/20

**D.      Public policy favors dismissal of Plaintiff's Complaint.**

There is no justification for the parties being before this Court at this juncture. Plaintiff's Complaint is in clear breach of her obligations under the Arbitration Agreement. She has no right to be here in light of her Complaint, and she should not be rewarded to any degree for ignoring, disregarding, and/or not paying attention to her contractual obligation to arbitrate her federal statutory claim against Lending Dollars. Anything but a dismissal of this lawsuit would be at least a partial reward for Plaintiff's intentional or unwitting failure to honor her contract with Lending Dollars. As noted above, the public policy codified in the FAA favors arbitration. Public policy also favors the enforcement of lawful contracts, such as the Arbitration Agreement. *See, e.g.*, *Selmer Co. v. Rinn*, 328 Wis.2d 263, 275-76, 789 N.W.2d 621 (Wis. App. 2010) ("Wisconsin courts have always recognized the importance of protecting parties' freedom to contract. We do this by ensuring each party performs according to its agreement. We will ordinarily enforce the parties' agreement, provided the contract does not impose obligations that are contrary to public policy.") (internal citations omitted). This action should be dismissed accordingly pursuant to the Arbitration Agreement.

WHEREFORE, Defendant Lending Dollars, LLC respectfully requests entry of an order dismissing this lawsuit pursuant to this Court's well-reasoned opinion in *Nevill v. Johnson Controls Int'l PLC*, 364 F. Supp. 3d. 932 (E.D. Wis. 2019). Alternatively, Defendant seeks a stay of this action pending arbitration.

18

Dated: March 25, 2020                              Respectfully submitted,

                                                   **Butzel Long, a professional corporation**

                                                   By:*/s/ Brett A. Rendeiro*
                                                   Brett A. Rendeiro, Esq.
                                                   150 W. Jefferson Ave., Suite 150
                                                   Detroit, Michigan 48226
                                                   Phone:  248-258-1312
                                                   Email: rendeiro@butzel.com

                                                   **Attorney for Defendant**


## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2020, I filed Defendant Lending Dollars, LLC's Memorandum in Support of Motion to Dismiss Pursuant to Mandatory Arbitration Agreement with the Clerk of the Court via the ECF electronic filing system, will send notification of such filing to all counsel of record.

                              By:*/s/ Brett A. Rendeiro*
                                 Brett A. Rendeiro, Esq.

IDETROIT\999999999\0500\2049830.v2-3/25/20